UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN E. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-00404-JRS-CSW |
| | ) |
| FOSTER, | ) |
| MARTIN, | ) |
| BENNETT, | ) |
| HYATT,[1] | ) |
| | ) |
| Defendants. | ) |

**Order Granting Summary Judgment on Exhaustion
in favor of Certain Defendants**

Plaintiff Kevin Smith, an Indiana Department of Correction (IDOC) inmate, filed this civil rights action under 42 U.S.C. § 1983 based on allegations of activity that occurred while he was at Wabash Valley Correctional Facility (Wabash Valley) between March and July 2019. Dkt. 16.

Defendant IDOC Officers—Martin, Bennett, and Hyatt—now seek partial summary judgment on the Eighth Amendment claims alleged against them, on the basis that Mr. Smith failed to exhaust his administrative remedies before bringing this lawsuit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).[2] For the reasons explained below, the defendants' partial motion for summary judgment, dkt. [28], is **GRANTED,** such that the Eighth Amendment claims against Martin, Bennett, and Hyatt are **DISMISSED without prejudice.**

---

[1] Lt. Hyatt's last name also appears as "Hiatt" throughout the record. Dkt. 28 at 1. The Court uses the spelling "Hyatt" because that is the spelling used in the caption.

[2] Additionally, an Eighth Amendment claim proceeds against defendant IDOC Officer Foster based on Mr. Smith's allegations that Officer Foster impeded his access to pain medication and medical treatment. Dkt. 16. The IDOC defendants have not pursued exhaustion related to Mr. Smith's claim against Officer Foster. *See* dkt. 28.

## I. Background

In March 2019, Mr. Smith underwent surgical repair of his right elbow and required ongoing medical care for his condition while at Wabash Valley. Dkt. 2 at 6. On April 23, 2019, Officer Foster "created a situation . . . by interfering with medical practice and delivery of his medication" which Mr. Smith alleges caused him to be placed on an approximate 4-month administrative medical hold on the Custody Control Unit (CCU). *Id.* at 10. During this hold, Mr. Smith alleges that he was deprived of medical treatment for his arm. *Id.*

Mr. Smith also alleges that while he was on this medical hold, he encountered cruel and unusual punishment when Officers Martin and Bennett and Lt. Hyatt harassed him by banging on his cell door with their keys or fists "in order to antagonize" and startle him. *Id.* at 11. He alleges that Lt. Hyatt personally participated in this conduct and allowed the staff to continue the abuse, which affected Mr. Smith's mental stability. *Id.* Mr. Smith states he suffers from both anxiety and post-traumatic stress disorder. *Id.*

Consistent with the Court's screening order, Eighth Amendment claims "proceed against Officers Martin and Bennett and Lt. Hyatt for their personal involvement in antagonizing and exacerbating Mr. Smith's mental health conditions by intentionally banging on Mr. Smith's cell while he was placed on a medical hold and did not have access to medical treatment." Dkt. 16 at 5.

## II. Preliminary Matters

Mr. Smith opposed the defendants' summary-judgment motion and filed more than 500 pages of exhibits in support. *See* dkt. 34 and 34-1.[3] The defendants replied. Dkt. 36. In addition,

---

[3] Mr. Smith's filings teem with unrelated grievances against different defendants regarding issues that are not relevant to the claims here. Moreover, Mr. Smith's arguments are convoluted and hard to follow because they muddle unrelated issues with the issues at hand here—whether he exhausted his administrative remedies on the circumstances surrounding his claims against Officers Martin and Bennett and Lt. Hyatt.

the Court granted the defendants' unopposed motion to strike Mr. Smith's surreply, dkt. 38, and it has not been considered in resolving the exhaustion issue. *See* dkt. 52. Accordingly, this matter was fully briefed when the defendants' filed their reply, but Mr. Smith continued to piecemeal additional submissions to the Court in June 2023, by filing an affidavit and a short appendix. Dkt. 42; dkt. 43. These filings, (docket numbers 42, 43, and 43-1) have not been considered by the Court because Mr. Smith was not given permission to file them. S.D. Ind. L.R. 56-1 (setting forth briefing on summary judgment). **The clerk is** therefore **directed to STRIKE Mr. Smith's filings at dockets [42], [43], and [43-1].**

### III. Legal Standards

#### A. Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

#### B. Prison Litigation Reform Act

On a motion for summary judgment, "[t]he applicable substantive law will dictate which

---

The Court's analysis focuses only on the arguments and documents relevant to this action. The Court cautions Mr. Smith from this kind of scattershot filing practice. Moreover, the Court need only consider the cited materials and need not "scour the record" for evidence that could be relevant to the summary judgment motion. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

facts are material." *Nat'l Soffit & Escutcheons, Inc., v. Superior Sys., Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust his available administrative remedies before bringing suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require.") (internal quotation omitted). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

It is the defendants' burden to establish that the administrative process was available to Mr. Smith. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required

to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

### IV. Statement of Facts

The following statement of facts was evaluated under the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to the non-moving party. *See Reaves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

#### A. Offender Grievance Process

At all times relevant to the allegations, Mr. Smith was incarcerated at Wabash Valley, an IDOC facility. Dkt. 2. IDOC Policy and Administrative Procedure 00-02-301 (Offender Grievance Process) is the applicable administrative policy and procedure for the relevant time. Dkt. 29-3 (effective October 1, 2017).

The Offender Grievance Process sets forth the procedure through which inmates committed to the IDOC "may resolve concerns and complaints relating to their conditions of confinement." *Id.* at 1. Inmates may initiate the grievance process about the actions of individual staff. *Id.* at 3. The Offender Grievance Process consists of three steps that inmates must take to exhaust their administrative remedies after first trying to resolve the issue informally. Dkt. 29-1, ¶ 10 (Crichfield Affidavit). "Before submitting a formal written grievance, an offender must first submit proof that [he] attempted to complete the informal grievance step of the grievance procedure." *Id.*, ¶ 14. For example, an inmate can demonstrate an informal attempt was made by "submitting a copy of a letter to the staff they have a dispute with, or by submitting a Request for Interview form." *Id.*

"Strict compliance with the offender grievance process is required for an offender to exhaust his administrative remedies." *Id.*, ¶ 29.

First, "[a]n offender wanting to submit a grievance on an issue that he . . . has been unable to resolve informally . . . shall submit a completed State Form 45471, 'Offender Grievance,' no later than ten (10) business days from the date of the incident giving rise to the complaint or concern to the Offender Grievance Specialist." Dkt. 29-3 at 9. Then, the "Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted form." *Id.* If a formal written grievance is rejected, the form is returned to the inmate and must provide "an explanation to the offender of the reason his Offender Grievance Form was rejected." Dkt. 29-1, ¶ 16. The inmate must then "make any needed revisions to his rejected grievance form and resubmit his revised form to the Grievance Specialist within five business days." *Id.*; *see* dkt. 29-3 at 10. If the inmate does not receive a receipt or a rejection of his submission within five business days, "the offender shall notify the Offender Grievance Specialist of that fact (retaining a copy of the notice)," and the matter must be investigated with a response to the inmate due within five business days. Dkt. 29-3 at 9.

The Grievance Specialist screens the submitted grievance within five business days of receipt and "shall either accept it and log it, or reject it." *Id.* at 10. An accepted grievance is assigned a log number and tracked in the OGRE system. Dkt. 29-1, ¶ 18. If the issue is not an emergency grievance, the Grievance Specialist is allotted fifteen business days from the date the grievance is received, "to complete an investigation and provide a response to the offender[.]" Dkt. 29-3 at 10.

Second, if the formal grievance is not resolved to the inmate's satisfaction or if the inmate receives no response within twenty days of being investigated by the Grievance Specialist, the inmate may file a completed State Form 45473 Level 1 "Grievance Appeal." *Id.* at 12. A Level 1

grievance appeal must be submitted to the Grievance Specialist within five business days after the date of the grievance response (or if the offender does not receive a response to the grievance within the applicable timeframe, it may be appealed as if it had been denied). *Id.* "The submission of State Form 45473 serves as notice that the offender wants to appeal to the Warden/designee's office." *Id.* The "Grievance Specialist must log the date he/she received the appeal, forwarded the appeal to the office of the Warden, and generate a receipt for the appeal." *Id.* "Once the appeal response is received from the office of the Warden, the Offender Grievance Specialist shall provide the offender a copy of the appeal response within one (1) business day." *Id.* If the inmate is dissatisfied with the Warden's response or receives no response within the relevant time, he "may appeal to the Department Offender Grievance Manager." *Id.*

The final step requires that an inmate wishing to appeal the Warden's appeal response to "check the 'Disagree box, sign, and submit the completed State Form 45473, 'Offender Grievance Appeal,' and any additional pertinent documentation to the Offender Grievance Specialist within five (5) business days of receipt of the Warden's . . . appeal response." *Id.* This is a Level 2 grievance appeal. *Id.* The Grievance Specialist "shall scan and enter the completed State Form 45473 and any additional pertinent documents" into the grievance database within 2 business days for review by the Department Offender Grievance Manager. *Id.* The Department Offender Grievance Manager's decision is final. *Id.* at 13.

Inmates are informed of the Offender Grievance Process during Offender Admission and Orientation and have access to a current copy of the policy in the facility law library. Dkt. 29-1, ¶ 11. Staff ensure that inmates are notified of the Offender Grievance Process and are aware of how to obtain copies of the process. Dkt. 29-3 at 7. Prisoners have access to the Department's Offender Handbook, which includes a section on the Grievance Process. *Id.*

**B. Mr. Smith's History of Grievances**

The record contains Mr. Smith's grievance history and related grievances, which the Grievance Specialist discusses in her affidavit. Dkt. 29-1; dkt. 29-4 (Smith's History of Grievances, report run on Jan. 27, 2023). The parties do not dispute that Mr. Smith successfully exhausted his administrative remedies related to his claims against Officer Foster in Grievance No. 107212. Dkt. 29-1, ¶ 24; dkt. 29-4 at 8; dkt. 29-5 at 1-14. The Court has reviewed Grievance No. 107212 and it includes no allegations against Officers Martin and Bennett or Lt. Hyatt, or concerns about banging on Mr. Smith's cell. Dkt. 29-5 at 1-14.

"The facility received a second grievance from Plaintiff on June 21, 2019, related to the alleged denial of medication by Defendant Foster. Additionally, this grievance also grieved the banging on Plaintiff's cell and slamming Plaintiff's cell door." Dkt. 29-1, ¶ 25. The Grievance Specialist attests that this grievance was investigated and responded to by July 16, 2019, and that "Plaintiff did not appeal this response by the facility." *Id.* This grievance was dated May 10, 2019, was logged as No. 107874, and was responded to on July 16, 2019. Dkt. 29-5 at 15-16. Mr. Smith writes in grievance No. 107874:

> On 4/23/19, while housed in the infirmary and dealing with medical issues Officer Foster created problems between myself and medical staff that has interfered with my progress of rehabilitation. On this day, this Officer came into the isolation cell and lied to and about myself. When I called her on the lies, she started arguing and then told the RN to leave and slammed infirmary doors (two occasions) knowing that I have issues of PTSD that is psychological and triggered by loud bangs [and] being startled.

*Id.* Grievance No. 107874 never explicitly mentions Officers Martin and Bennett or Lt. Hyatt. *Id.* Mr. Smith acknowledges that he filed Grievance No. 107874 against Officer Foster only. *See* dkt. 34 at 4, 56 ("Smith filed two (2) grievances against Wexford Health and Officer Foster" and referring specifically to Grievance No. 107874, "on May 10, 2019, Smith filed a grievance against

8

Ms. Foster[.]"). Mr. Smith's history of grievances show no record of any appeals of Grievance No. 107874. Dkt. 29-4 at 8.

### C. Mr. Smith's Affidavit and Exhibits

Mr. Smith's account of his attempts to grieve his issues against Officers Martin and Bennett and Lt. Hyatt are described in his affidavit.[4] *See* dkt. 34 at 10-12. Mr. Smith attests that he was "not allowed to exhaust" his state remedies at Wabash Valley and "did the best that was available" to him. *Id.* at 10. He attests that on May 8, 2019, he filed an informal complaint "due to Officer Martin continuing actions to bang on [his] door causing unnecessary [] stress and anxiety." *Id.* In response to that informal complaint, Mr. Smith had an in-person conversation with Lt. Hyatt on May 30, 2019, and Lt. Hyatt told him that the situation would be handled and to sign the informal complaint. *Id.* at 11. However, the issue was not resolved, and on June 5, 2019, he "filed a formal grievance due to the continued and deliberate actions of Officers Martin and Bennett." *Id.* When he did not receive a response, he "wrote a letter to Warden Brown requesting an appeal form," on [June] 23, 2019, but the Warden nor his designee replied. *Id.* On [June] 26, 2019, Mr. Smith attests that he spoke with the assistant Warden about staff issues, including his issues with these defendants, and after that meeting, he was transferred to New Castle Correctional Facility on July 23, 2019. *Id.*

Mr. Smith includes the May 8, 2019, informal complaint, the June 5, 2019, written grievance to the Warden, and his June 23, 2019, letter to the Warden, in his response in opposition. *See id.* at 106-08 (containing the aforementioned documents which Mr. Smith refers to as Exhibits 15, 16, and 17).

---

[4] The Court notes that Mr. Smith made what appear to be scrivener's errors when listing the dates of his grievance attempts in his affidavit. Read in context with Mr. Smith's response in opposition and the exhibits he provided in the record, the Court has amended those dates to reflect the correct date of June 2019, rather than July 2019.

## V. Discussion

The defendants argue that Mr. Smith "did not properly complete the grievance process by appealing the response related to the alleged acts of officers banging on his cell, ID Log 107874," and that "the undisputed evidence shows that the offender grievance process was available to Plaintiff as he had completed it numerous times." Dkt. 30 at 5; dkt. 36 at 1. Mr. Smith argues that he "practiced due diligence in trying to exhaust administrative state remedies but the remedies were not available to him at Wabash Valley." Dkt. 34 at 3 (cleaned up).

Critical to the Court's analysis is not Grievance No. 107874, and whether or not Mr. Smith took the steps to appeal it, because the undisputed evidence reflects that this grievance related to Officer Foster's conduct only.

What is relevant to the Court's analysis are the attempts Mr. Smith attests he took to specifically grieve Officers Martin and Bennett and Lt. Hyatt's conduct—his informal complaint, his written grievance that he claims was unlogged, and his letter to the Warden requesting appeal forms when he received no response to his unlogged written grievance. *Id.* at 106-08 (Exhibits 15, 16, and 17). These documents are the basis of Mr. Smith's argument that he tried to exhaust his remedies but was circumvented from doing so. Indeed, he argues that he first completed an informal attempt to grieve his issues on May 8, 2019, and though that prompted a conversation with Lt. Hyatt, the issues were unresolved. *Id.* at 4. He then argues that he "filed a grievance and gave it to the house staff" on June 5, 2019, but that this grievance was not logged, he was not provided with a receipt for it, and that it went unanswered. *Id.* at 4-6. He contends that "[a]n inmate's only way to file any document is by handing the document to prison officials, [and] the prison officials should be mandated to document and sign a receipt for the inmate's record and date

of filing."[5] *Id.* at 9. Thus, he requested an appeal form to appeal the grievance under the Offender Grievance Process provision that an inmate that does not receive a response to a grievance can begin the next steps in the process as if the grievance had been denied. *Id.* He claims the Warden "has to provide the proper Appeal form #45473," but no such forms were provided to him. *Id.*

In reply, the defendants argue that Mr. Smith's exhibits "shows that he never even filed a formal grievance regarding his disputes with State Defendants . . . . Exhibits 15 and 16 are informal letters and do not satisfy any step of the Offender Grievance Process." Dkt. 36 at 2. The Court agrees.

First, Mr. Smith's informal complaint is not evidence that he completed the three required steps in the Offender Grievance Process.

Second, the record does not indicate that Mr. Smith filed a formal grievance related to Officers Martin and Bennett and Lt. Hyatt, to initiate the first step in the process. Mr. Smith's written grievance, dkt. 34 at 108, is not on a completed State Form 45471 and is addressed to "Superintendent D. Brown," not the Grievance Specialist, and is therefore, not in compliance with the Offender Grievance Process. *See* dkt. 29-3 at 9 ("An offender wanting to submit a grievance on an issue that he/she has been unable to resolve informally . . . **shall submit a completed State Form 45471**, 'Offender Grievance,' no later than ten (10) business days from the date of the incident . . . **to the Offender Grievance Specialist**.") (emphasis added). "For a prisoner to exhaust his remedies within the meaning of § 1997e(a), he must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005) (quotation marks and citations omitted). Mr. Smith has not designated evidence

---

[5] Mr. Smith's desire for a *different* administrative remedy process is not evidence that he completed the *established* Offender Grievance Process for exhausting his administrative remedies before filing this action, or that he was somehow thwarted from using the established process.

that he properly completed a formal grievance and sent it to the appropriate party—the Grievance Specialist—for screening, logging, and investigation into the issue. Nor has he pointed to evidence that he was somehow prevented from accessing a State Form 45471 "Offender Grievance"; rather, his affidavit states he was not provided with appeals forms. Dkt. 34 at 11. But, even if Mr. Smith was not provided with requested appeal forms, it is of no consequence here, because he first needed to properly complete the first step of the Offender Grievance Process by submitting a compliant formal grievance related to the defendants' conduct. Sufficient completion of step one would have presumably then triggered the appellate process for steps two and three.

Third, evidence in the record, namely, Mr. Smith's ability to properly complete State Form 45471s in his efforts to grieve Officer's Foster's conduct, show that Mr. Smith was aware of the requirements of the Offender Grievance Process and in this case, that the process was available to him.

Accordingly, the consequences of these circumstances, in light of 42 U.S.C. § 1997e(a), is that this action should not have been brought against defendants Officers Martin and Bennett and Lt. Hyatt, and these federal claims against them must now be dismissed without prejudice. *Ford*, 362 F.3d at 401 (holding that *all* dismissals under § 1997e(a) should be without prejudice.").

## VI. Conclusion

For the reasons explained above, the defendants' motion for partial summary judgment on exhaustion, dkt. [28], is **GRANTED**. All claims against Officer Martin, Officer Bennett, and Lt. Hyatt are **DISMISSED without prejudice**. The claims against Officer Foster **shall proceed**. No partial final judgment will issue at this time. **The clerk is directed to terminate** Officer Martin, Officer Bennett, and Lt. Hyatt as defendants on the docket.

**IT IS SO ORDERED.**

Date: 09/25/2023

                                           JAMES R. SWEENEY II, JUDGE
                                           United States District Court
                                           Southern District of Indiana

Distribution:

KEVIN E. SMITH
160176
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com